THE UNITED STATES, PLAINTIFFS IN ERROR, v. CATESBY AP. ROGER JONES.

Where an officer of the navy was detached on special duty in France, and a sum of money was transmitted to him by the secretary of the navy, to be disbursed for

medical attendance, the propriety of this act was peculiarly within the jurisdiction and discretion of the head of the department; and the officer cannot be charged with the amount so transmitted, by the accounting officers of the treasury department.

THIS case was brought up, by writ of error, from the circuit court of the United States, for the District of Columbia, holden in and for the county of Washington.

The facts are stated in the opinion of the court.

It was argued by *Mr. Cushing,* (attorney-general,) for the United States, and by *Mr. Carlisle,* and *Mr. Jones,* for the defendant.

*Mr. Cushing's* points were :—

1. The expenses incurred by Lieutenant Jones while in France, on leave of absence, were not chargeable to the United States. The act of 3d March, 1835, (4 Stats. at Large, 755, 757,) fixed the annual compensation of officers, and prohibited all other allowances. When absent on leave, the government is not bound to provide medical attendance.

2. The secretary of the treasury was not authorized to advance the money in question to Lieutenant Jones.

The act of January 31, 1823, (3 Stats. at Large, 723,) only allows advances to officers employed on distant stations. This was when they received emoluments, which were cut off by the act of 1835.

3. The accounting officers are not bound to allow, in a settlement of an account with an officer, a credit for money unlawfully received or expended, without authority of law.

The act of 3d March, 1849, (9 Stats. at Large, 419,) applies to pursers and storekeepers only, and the disbursement must be made in pursuance of an order from an officer in command. The opinions of the following attorneys-general, do not apply to the case. Mr. Berrien, Parker's case, 1 Opinions Attorney-General, 679; Mr. Taney, Thorp's case, 1 Opinions Attorney-General, 785; Mr. Butler, Parker's case, 1 Opinions Attorney-General, 913; Mr. Johnson, (Miami claim,) Lassell's case, 2 Opinions Attorney-General, 1998; Mr. Crittenden, commissioner of customs, November 13, 1852, MS.

4. Money belonging to the government, which has been wrongfully received, can be recovered back in an action at law.

5. The President is not authorized to expend marine hospital money in a foreign country.

The counsel for defendant in error, contended that the above opinions of attorneys-general were applicable, and

1. That the payment of the medical attendance of an officer,

is not such an allowance to the officer, as was contemplated in the prohibition of the act of 1835.

2. That the act of 1823, provides " that the President of the United States may direct such advances as he may deem necessary and proper, to such persons in the military and naval service as may be employed on distant stations, where the discharge of the pay and emoluments to which they may be entitled, cannot be regularly effected." Medical attendance is one of these emoluments.

3. Under the acts (1 Stats. at Large, 606, c. 77, § 3 ; Ib. 729, c. 36, §§ 2 and 3) providing for hospital money, the President is authorized to provide for sick and disabled officers in such manner as he shall direct, in ports where no United States hospitals exist. The order of the navy department was conclusive on the fourth auditor.

4. The act of 1849 (9 Stats. at Large, 419, Res. 17, § 2,) requires the disbursement to be allowed and the commanding officer to be held responsible. In this case, it would be the President.

5. Money paid under such circumstances with a full knowledge of the facts, cannot be recovered back. 2 East, 469 ; 4 Dallas, 109 ; Starkie's Ev. pt. 4, p. 112.

Mr. Justice GRIER delivered the opinion of the court.

The action in this case is for money had and received by the defendant, Jones. It was entered amicably, and submitted on a case stated.

The defendant is a lieutenant in the navy of the United States. In December, 1851, he was in Paris, on leave of absence, and was severely and dangerously wounded by accident, during the emeute or revolutionary outbreak in that month. In July, 1852, he was placed by the secretary of the navy on special duty, for the collection of information relative to the steam navy of France. Afterwards, in August, 1852, the sum of one thousand dollars was transmitted to him by the secretary of the navy, with orders to apply it " to discharge the expenses attending the injuries received by him in Paris." It is admitted that this money was disbursed according to the orders of the secretary. The accounting officers of the treasury have charged the amount so disbursed by the defendant against him on his pay account, " and have refused to recognize the authority of the secretary of the navy in the premises."

The reason alleged for this refusal by the accounting officer is, that by his construction of the second section of the act of 3d of March, 1835, c. 27, the secretary of the navy had no authority to make such appropriation of the funds of the govern-

ment in his hands. The act, so far as it is material, is in these words: " That the yearly allowance provided in this act is all the pay, compensation, and allowance which shall be received under any circumstances whatever by any such officer, &c."

Notwithstanding an opinion of a late attorney-general to the contrary, the accounting officer " entertains no doubt" that the expenses attending the medical treatment of a sick and disabled officer or seaman are among the " allowances" prohibited by this act, and has consequently felt bound to repudiate the secretary's construction of the law, and his opinion as to the powers and duties of his department.

For the purposes of this case, however, it will not be necessary for the court to decide between these discordant opinions as to what things come within the category of " allowances," according to the true intent and meaning of the act of congress.

It is the peculiar province and duty of the navy department to provide medical stores and attendance for the officers and seamen attached to that service. It may truly be said, also, to enter into the contract of the government with persons so employed by them. For this purpose, a bureau of medicine is attached to this department, and numerous medical officers appointed. The law, moreover, exacts from every officer and seaman a monthly contribution from their wages to make provision for the sick and disabled. These contributions are applied, under the supervision of the President, to the erection and maintenance of marine hospitals, and similar institutions for the benefit of seamen.

The exigencies of the service often require the employment of soldiers and sailors at a distance from public hospitals, and when the attendance of the medical officers cannot be obtained; or, consequently, in fulfilment of the humane policy of the government, it frequently becomes necessary to employ temporarily physicians not regularly commissioned. For in this way alone can the department perform the duty assumed by the government of providing the necessary medical attendance for those who become sick or disabled in its service. The executive department of the government, to which is intrusted the control of the subject-matter, must necessarily determine all questions appertaining to the employment and payment of such temporary agents, and the exigency which demands their employment. The secretary of the navy represents the President, and exercises his power on the subjects confided to his department. He is responsible to the people and the law for any abuse of the powers intrusted to him. His acts and decisions, on subjects submitted to his jurisdiction and control by the constitution and laws, do not require the approval of any officer of

another department to make them valid and conclusive. The accounting officers of the treasury have not the burden of responsibility cast upon them of revising the judgments, correcting the supposed mistakes, or annulling the orders of the heads of departments.

In the case before us, the defendant has not come before the accounting officers of the treasury, claiming from the government an " allowance" for medical attendance while on leave of absence, and submitting to these officers the propriety and legality of such " allowance." On the contrary, the agreed case shows, that a sum of money had been transmitted to the defendant by the secretary of the navy to be disbursed, and that he had disbursed it according to his orders; and whether it was for paying for services acknowledged by the secretary to have been rendered to the government for medical attendance on the defendant himself, or on another, could make no difference. The liability of the defendant to refund this money to the government is founded on the act of the accounting officer charging him with it, because, in his opinion, the secretary of the navy had mistaken the law or abused his discretion.

We are of opinion that he was not bound to assume this responsibility.

The propriety of detaching the defendant on special duty in France, of furnishing him with medical attendance while so employed, and of adopting and ratifying his act in the employment of such physician, under all the circumstances, are all subjects peculiarly within the jurisdiction and discretion of the head of the navy department, and not subject to revision or correction by the officers of any other department.

The judgment of the circuit court is therefore affirmed.

Mr. Justice CATRON, and Mr. Justice DANIEL, dissented.

Mr. Justice DANIEL, dissenting.

I am unable to concur in the opinion of the court just pronounced in this cause, for the reason that this opinion, upon mere assumed and hypothetical considerations of hardship or motives by which the legislature may have been influenced, undertakes directly to contravene, and in reality to annul a law, than which there is not one more clear or more positive in its provisions to be found upon the statute book.

With respect to considerations of hardship in the operation of a positive law, or of the motives of those by whom it has been enacted, I can, in expounding its provisions, assume no power which is legitimate; those are subjects exclusively within the province of the lawmakers, and to them it belongs to control them.

The statute here referred to as being affected by the opinion in this case, is that bearing date on the 3d of March, 1835, (4 Stats. at Large, 755, 757,) regulating the pay of the navy of the United States.

If it were by me deemed regular to seek for the objects of congress in the changes by this law of the provisions of previous statutes, those objects might perhaps be correctly inferred from the fact that, by the law of 1835 now under consideration, the compensation previously made to officers of the navy was in many, if not in every instance, at least doubted. But I deem it proper to confine myself to the language of the statute of 1835; and to expound its clear and unambiguous terms without reference to any thing *dehors* those terms, and especially freed from any rule of interpretation so uncertain as mere conjecture.

By this law, after regulating the pay of naval officers of every grade, it is declared, section 2: " That no allowance shall hereafter be made to any officer in the naval service of the United States, for drawing bills, for receiving or disbursing money, or transacting any business for the government of the United States, nor shall he be allowed servants, or pay for servants, or clothing, or rations for them, or pay for the same, nor shall any allowance be made to him for rent of quarters, or to pay rent for furniture, or for lights or fuel, or transporting baggage." After the above enumeration, comprehensive as it is, we find in the law the following exclusion of any and every allowance which might be claimed, upon the ground of its having been omitted in the enumeration preceding it: " It is hereby expressly declared, that the yearly allowances provided by this act, is all the pay, compensation, and allowance that shall be received, under any circumstances whatsoever, by any such officer or person, except for travelling expenses when under orders, for which ten cents per mile shall be allowed."

That the officers of the navy were cognizant of the mandate of this law, must be presumed; but, in addition to this legitimate conclusion, it is known as an historical fact in the public administration of the government, that, by a circular addressed to them, they were severally informed of the provisions of the law; besides which, they must unavoidably have learned them by every settlement for their pay at the treasury.

How, then, it can be possible to escape from the comprehensive language of the statute, which may well be styled " the exclusion of every conclusion" in favor of the claim by Lieutenant Jones, it passes my power to perceive. It will not be pretended by any one, that the advance made to him was a portion of his yearly pay, yet the statute declares that the yearly pay shall be " all the pay, compensation, and allowance that

shall be received by any such officer or other person, under any circumstances whatsoever, except for travelling expenses, for which ten cents per mile may be allowed."

Surely the phrase, "under any circumstances whatsoever," is broad enough to comprehend any casualty to which any person may be exposed.

But it has been alleged, in excuse for the retention of this money by Lieutenant Jones, that there was no naval surgeon in Paris, and that the money was advanced by the secretary of the navy. To the first part of this apology it is a sufficient reply to state : first, that the statute has declared the pay of the officer to be a sufficient allowance under all circumstances whatsoever, and, therefore, under the circumstances of this case, no allowance beyond that graduated by the law itself could properly be claimed; second, that the government could be under no conceivable obligation, even independently of the express exclusion of the law, to provide medical or surgical attendance to wait upon an officer off duty, and not necessarily exposed to any of the perils of duty ; that had Lieutenant Jones been on duty, he would have been attended by a portion of the medical staff, and been, if in reach of them, entitled to the benefit of the naval hospitals ; and thus, under the regular usages of the service, been supplied with those aids for which the law and the usages of the service has made provision. Every one can perceive the danger of abuse attendant on a practice, by an officer, of employing a surgeon or physician, *ad libitum*, to attend him when off duty, and to charge the expense of such employment to the government as a legitimate allowance to the officer when off duty.

It is no excuse for an irregularity like this to say, that where troops or vessels are employed on distant service there may be resort to medical or surgical aid; in such an instance, the persons called in would be engaged for the army, the fleet, or the corps generally, at regulated rates, and the account for such services would be settled and certified in conformity with such rules or rates ; but an instance of this kind, justified by necessity alone, and conducted by rule, can bear no similitude to the advance, without authority of law or usage, of a round sum of money to one whose compensation had already been provided, and to be expended by him according to his own tastes or ideas, without known regard to any other criterion, and to be accounted for to nobody.

The secretary of the navy had no authority of law for making the advance in question. It was not within the provisions of the law for the creation and application of the hospital fund. That fund, by the law which created it, is to be applied to objects and in modes designated, and the present instance falls not within either of the directions of the law.

But it has been insisted that the secretary of the navy, having ordered the payment of this money, the subordinate or beneficiary cannot be called on for reimbursement; first, because the payment having been voluntarily made by the government, the money could not be recovered back upon the rules governing actions for money had and received; and, secondly, that the secretary himself, if any one, and not his subordinates, should be made accountable. These two excuses do not appear to be altogether consistent; for if the money was paid under a competent authority, and with full knowledge and in good faith, there could be no recovery on any account. But it is denied that the secretary had the power to make the payment or advance, or that he can be looked upon as being the government, or in any respect as being identified with the government, except so far as he is acting within his regular constitutional and legal sphere. To hold the converse of this, would be to justify the most irregular and flagrant abuses, and to cover them with the excuse that they were the acts of the government itself which had been wronged.

Well, then, with respect to any protection which can be extended to the recipient of this money, upon the mere ground that it was paid to him under an order from the secretary of the navy. The officers of the navy must, like all others, be presumed to be cognizant of the law. If, then, with this necessary imputation of knowledge, an officer, either through the ignorance, or carelessness, or mistake, or connivance of the agent of the government, get possession of and apply to his own advantage the funds of that government, and seek to protect himself by alleging a voluntary payment to him, such a defence would seem to be warranted neither by law, nor equity, nor good faith.

Again, it has been insisted that the sum of money having been advanced by direction of the secretary of the navy, the auditor, by whom, according to law, the accounts of Lieutenant Jones were to be settled, could have no right to question the legality or regularity of such advance, or to charge it to the officer who had used it; and this position seems to be rested upon the naked position that the auditor, being subordinate to the secretary of the navy, has no right or power to examine into his acts, although such are necessarily complicated or connected with the actings and doings of those transactions the law requires him to examine and adjust. To such a rule of proceeding as this, I can by no means subscribe; I know of no rule of subordination which can justify, much less demand, a departure from the law, or from integrity, in obedience merely to the fact of inferiority in the gradation of place. Each and every officer has his duties to perform, and is bound to their performance

with independence and good faith; and no matter whose acts may be brought before him, whether those of his immediate superior or one much higher in power, he is bound to bring them all to the test of the law, and to pronounce upon all, from the greatest to the least, by one inflexible rule, the rule of duty; and surely, when an appeal is made to tribunals of justice, they should recognize no standard but that of the law itself.

My opinion is, that the decision of the circuit court should be reversed, and judgment entered for the plaintiffs.