Drake, Ch. J.,
delivered the opinion of the court:
But one question is involved in this case, and that we think has been, in effect, decided by this court and the Supreme Court of the United States; not under the particular statutory provision here involved, but under another so similar in the authority conferred upon the Commissioner of Internal Revenue, that the decisions rendered under it may fairly be held directly applicable here.
Four cases of this descriptionJhave been before us, in each of which we were called upon to declare our judgment upon the effect of section 3220 of the Revised Statutes, which, so far as it defines the powers of the Commissioner of Internal Revenue, is as follows:
“ Sec. 3220. The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and ail taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected.”
In each of those four cases the Commissioner made an allowance of a refund of taxes illegally assessed; in each of them the Comptroller of the Treasury refused to pass the claim; and in each of them this court gave the claimant judgment for the amount which the Commissioner had allowed. (Kaufman’s Case, 11 C. Cls. R., Coil; Woolner’s Case, 13 ib., 355; Bank of Green-castle’s Case, 15 ib., 225; and Heal Estate Savings Banlc of Pittslourgh’s Case, ante, 335.)
Only one of those cases — that of Kaufman — has been passed upon by the Supreme Court of the United States, and in that our judgment was affirmed; the Chief Justice, in the opinion of the court, thus expressing their view of the law:
“ It is now insisted that the finding of an allowance by the Commissioner is not enough, and that the court should have-gone behind the allowance and found the facts in respect to the original claim.
“ Such, we think, is not the law.
“To say the least, the allowance of a claim under this statute is equivalent to an account stated between private parties, which is good until impeached for fraud or mistake.
“ It is not the allowance of an ordinary claim against the government by an ordinary accounting officer, but the adjudi *519 cation by the first tribunal to which the matter must by law be submitted.
“ Until so submitted, and until so adjudicated, there is not even a prima faeie liability of the government; but when submitted, and when allowed upon the adjudication, the liability is complete until in some aj>propriate form it is impeached.
“ When, therefore, the court found the adjudication against the government, without impeachment, the liability to j»ay was established.
“ We do not decide that in the Court of Claims the adjudication of the Commissioner may not be impeached, but we do decide that until impeached it is binding, and that the affirmative of the impeachment is upon the government.” (90 U. S., 570.)
As regards the powers conferred on the Commissioner by section 3220, and the legal effect of his allowance of a refund of taxes illegally assessed, we hold the matter settled by that language of the Supreme Court. ,
The present case arises under section 6 of the act of March 1, 1879, " to amend the laws relating to internal revenue” (20 Stat. L., 327), which section is as follows:
“ Sec. 6. That whenever, under the provisions of section thirty-three hundred and nine of the Kevised Statutes, an assessment shall have been made against a distiller for a deficiency in not producing eighty per centum of the producing capacity of his distillery as established by law, or for the tax upon the spirits that should have been produced from grain, or fruit, or molasses found to have been used in excess of the capacity of his distillery for any month, as estimated according to law, such excessive use of grain, or fruit, or molasses having arisen from a failure on the part of the distiller to maintain the capacity required by law to enable him to use such grain, or fruit, or molasses without incurring liability to such assessment, and it shall be made to appear to the satisfaction of the Commissioner of Internal Kevenue that said deficiency, or that said failure, whereby such excessive use of grain, molasses, or fruit arose, was not occasioned by any want of diligence or by any fraudulent purpose on the part of the distiller, but from misunderstanding as to the requirements of the law and regulations in that respect or by reason of unavoidable accidents, then, and in such case, the Commissioner of Internal Kevenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal made to him, to remit or refund such tax, or such part thereof as shall appear to him to be equitable and just in the premises.”
Under this section the Commissioner of Internal Kevenue made the allowance in question, being deficiency taxes paid by *520 the claimants with penalty and interest; which deficiency resulted from unavoidable and unforeseen accident, without want of diligence or any fraudulent purpose of the claimants; as declared by the Secretary of the Treasury in his letter approving the Commissioner’s allowance.
Comparing the terms of section 3220 with those of the act of 1879, no one can fail to note the essential identity of the two grants of power to the Commissioner.
In the former, the granting words are—
“The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal to him made, to remit,” &c.
In the latter, the granting words are—
“Whenever * * it shall be made to appear to the satisfaction of the Commissioner of Internal Revenue that said deficiency * * * was not occasioned by any want of diligence or by any fraudulent purpose on the part of the distiller, * * * then, and in such case, the Commissioner, subject to regulations prescribed by the Secretary of the Treasury, is authorized, on appeal made to him, to remit,” &c.
The difference in terms between these two grants of authority is the use, in the latter, of the words “ whenever it shall he made to appear to the satisfaction of the Commissioner” ; but this refers merely to the occasion when the granted power may be exercised, and not to the extent, operation, and effect of the power. In each case the power is to remit, &c.; in each, it is to be exercised on appeal made to the Commissioner; and in each it is to be exercised subject to regulations prescribed by the Secretary of the Treasury.
When, in the act of 1879, it was prescribed that certain things should be “ made to appear to the satisfaction of the Commissioner”, as a condition precedent to the exercise of the power there granted, it was only an expression of what the law would imply from the language of section 3220, as a condition precedent to the exercise of the power therein bestowed.
So, not only in terms, but in legal effect, the power of the Commissioner. is the same under the two statutes, but to be exercised in different cases and over different subjects-matter.
Such being the case, we are clear in holding that the above cited language of the Supreme Court is to every intent as applicable to this case as if it had been uttered therein, and that the allowance now before us is “an adjudication” in favor of *521 the claimant, upon which “the liability” of the United States “is complete until in some appropriate form it is impeached”; and no attempt was made at the trial to impeach it.
That the accounting officers of the Treasury refuse to certify for payment the Commissioner’s allowance is ■wholly immaterial. Congress has intrusted the power of making such an allowance tó the judgment and discretion of the Commissioner, subject to the regulations prescribed by the Secretary of the Treasury. In this case those regulations have been complied with, and the Secretary has approved the allowance. The case is substantially like that of United States v. Jones (18 How., 92). Jones, a lieutenant in the Navy of the United States, was in Paris, France, in December, 1851, on leave of absence, and was severely and dangerously wounded by accident during the revolutionary outbreak in that month. In July, 1852, he was placed by the Secretary of the Navy on special duty, for the collection of information relative to the steam navy of France. After-wards, in August, 1852, the sum of $1,000 was transmitted to him by the Secretary of the Navy, with orders to apply it “ to discharge the expenses attending the injuries received by him in Paris,” and the money was disbursed according to that order. The accounting officers of the Treasury charged the amount so disbursed by Jones against him on his pay account, and refused to recognize the authority of the Secretary of the Navy in the premises. The Supreme Court sustained his action, and overruled that of the accounting officers, and said: “The liability of the defendant to refund this money to the government is founded on the act of the accounting officer charging Mm with it, because, in his opinion, the Secretary of the Navy had mistaken the law or abused his discretion. His acts and decisions on subjects submitted to his jurisdiction and control by the Constitution and laws do not require the approval of any officer of another department to make them valid and conclusive. The accounting officers of the Treasury have not the burden of responsibility cast upon them of revising the judgments, correcting the supposed mistalces, or annulling the orders of the heads of depart-mentsP
Under these rulings of the Supreme Court, we can do no less than order, as we do, a judgment in favor of the claimants for the amount of the allowance, $446.99.