WeldoN, J.,
delivered the opinion of the court:
The claimant was, at the time of the occurrence of the matters hereinafter stated, an ensign on the retired list of the Navy, but was, by the act of January 12, 1901 (31 Stat. L., 215), placed on the active list as lieutenant-commander.
On September 17, 1898, the Department issued an order to the claimant assigning him to duty at the naval observatory, navy-yard, Mare Island, Cal., and he reported in obedience to that order Qn September 29, 1898.
On October 3, 1898, the Secretary of the Navy appointed the claimant marine meteorologist for duty at said navy-yard at a salary of $2,000 per annum, payable from the appropriation of $50,000,000, entitled “National defense,” made by act of March 9, 1898. ’ (30 Stat. L., 274.)
In accordance with that appointment the claimant entered upon the discharge of his duties. On November 14, 1898, the claimant addressed a letter to Gen. J. J. Reynolds, U. S. Army, in which it is said:
“I fear that Secretary Long’s kind wi to have me here and to give me that appointment as marine meteorologist, with pay from the ‘ emergency fund,’ may have caused some question as to legality, the war not having ended. I beg to *47 suggest that, if so, my civil appointment be canceled for die present, as I have drawn'uo pay under it and am unwilling to do so if it in any wajr embarrasses the Department. To make up for the loss to me to some extent, the Department might order me at once to the Naval Observatory in Washington for a short tour of dutjr, when I could try the exami- • nation on December 6 before the Civil Service Commission, and if successful be appointed after the treaty of peace is signed, thereby securing perfect legality. ”
To that letter, so addressed, the Secretary of the Nav}", on the 21st of November, 1898, replied as follows:
‘ ‘ The Department is of the opinion that there is no question as to the legality of your appointment, nor is there a question as to the matter of drawing pay from the emergency fund, out of which appropriation you will be paid until January 1, 1899. As to the further suggestion that you be ordered to the Naval Observatory in Washington for a short tour of duty in order that you may enter the examination for marine meteorologist, December 6, before the Civil Service Commission, the Department will request the Commission to hold an examination at Mare Island or San Francisco, and in case of favorable action by the Commission it would not necessitate your coming East.”
On June 6, 1899, the Secretary of the Navy addressed claimant as follows:
“Congress having failed to appropriate for the position of marine meteorologist at the Mare Island Navy-Yard, your pay and services as marine meteorologist, at $2,000 per annum, department of equipment, navy-yard, Mare Island, Cal., are hereby discontinued, to take effect June 30, 1899.”
Claimant was paid as marine meteorologist at $2,000 per annum from October 28, 1898, to June 30, 1899, and also during the same period he received from the paymaster pay as a navy officer on active duty until April 11, 1899, after which he received pay as a navy officer on the retired list.
Upon the question of his right to pay being raised by the accounting officers, it was held by the Auditor for the Navy Department and the Comptroller of the Treasury that he was lightly paid as marine meteorologist from the 12th of April to the 30th of June, 1899, but to have been erroneously paid as such from the 28th of October, 1898, to the 11th of April, 1899, amounting to $909.57, and that amount was therefore *48 from time to time checked against Mm and deducted from his current pay. This suit is brought to recover that sum.
The question in this case is the claimant’s right to recover as compensation, while an officer on the retired list of the Navy, a salaiy at the rate of $2,000 per year as marine meteorologist in the Navy, under appointment by the Secretary of the Navy, with a promise to be paid such salaiy. The salary was to be paid from the emergency fund created by the act of March 9, 1898 (30 Stat. L., 273, 274), which provided as follows:
“Eor the national defense, and for each and every purpose connected therewith, to be expended at the discretion of the President, and to remain available until January first, eighteen hundred and ninety-nine, fifty million dollars.”
On the 5th of January, 1899, the unexpended balance of the fund was reappropriated and made continuing for six months (31 Stat. L., 772, 781). The claimant, not being satisfied with his status, wrote a letter as shown in the findings, which was called to the attention of the Secretary of the Navy, and in reply to that letter the Secretaiy of the Navy, on the 21st of November, 1898, wrote claimant as heretofore stated, assuring him that he would be paid the salaiy of $2,000 per year.
It is insisted by the counsel for the claimant that the statute appropriating $50,000,000 gives absolute discretion to the President in the use of the money placed at his disposal, and that the exercise of, such discretion can not be questioned in any form of judicial investigation.
It is insisted by the defendants that while the claimant received pay as on the active list he was not entitled to the allowance of $2,000 per annum; but that after April 11, 1899, when he was reduced to the pay of a retired officer, he was entitled to the pay under his appointment as marine meteorologist. To maintain the theory of the defense, the counsel for the United States calls the court’s attention to section 1765 of the Revised Statutes and the act of June 20, 1874, which, as it is contended, circumscribe and limit the discretion of the President in the use and appropriation of the “ emergency fund.” To maintain the theory of limited and circumscribed discretion, the defendant’s counsel cites many *49 cases in which the Supreme Court and this court have held, that an officer whose salary and emoluments are fixed by law or reg-ulations, shall not receive additional pay or compensation unless the same is authorized by law stating that such officer is entitled to such extra pay or allowance.
The statute under which the appointment of the claimant was made, and upon which he bases his claim, is most peculiar in the histoiy of American legislation, and evinces the utmost confidence of Congress in the President in the proper distribution of the enormous sum of §50,000,000, to meet the exigencies of the danger which then threatened the United States in their relations with Spain, and from which in a short time thereafter originated what is now known in history as the Spanish war.
If the discretion of the President was by the terms of the statute absolute, it eliminates from this controversy all the elements of doubt, and no inquiiy can be made into the legality of the appointment of the claimant with the stipulated salary. It is, however, not necessaiy for us to go to the length of inquiring whether the discretion contemplated by the statute was absolute or qualified.
It must be conceded, in any view of the case, that the power granted by the law was intended to be the most adequate and comprehensive, covering as it does ‘ ‘ the national defense and for each and every purpose connected therewith.” The President, speaking through the medium of the Secretary, says, as an indication of the best of faith in the execution of the great public trust, “The Department is of the opinion that there is no question as to the legality of your appointment, nor is there any question as to the matter of drawing pay from the ‘ emergencj’’ fund.’ ” We cite this expression of the Secretary as an indication of the confidence with which the appointment was made and the salary assured.
The appropriation of the $50,000,000 and the large power granted to the President are clear indications of the legislative recognition of the almost endless task of providing in detail as to the mode and manner of the expenditure of the money appropriated by the statute, and discloses by the phraseology of the law the multifarious necessities which *50 existed on the part of the United States in a military point of view.
In the case of Wilcox v. Jackson (Pet., 513) the Supreme Court said:
“The President speaks and acts through the heads of the several departments relative to subjects which appertain to their respective duties.”
Also, in the case of The United States v. Alliason (16 Pet., 291), it is said—
“that the Secretary of War is the constitutional organ of the President for the administration of the military establishment of the nation and orders promulgated through him must be received as the acts of the Executive, and so in regard to the action of the Secretary of the Navy, it must from analogy be said that his acts are presumed to be the acts of the President. ”
In the case of the United States v. Matthews (173 U. S., 381) the question was the allowance of additional compensation promised by the authority of the head of a Department, under an appropriation for “The detection and prosecution of crhnes against the United States, to be expended under the direction of the Attornej^-General. ”
The Supreme Court, in affirming the judgment of this court (32 C. Cls. R., 123), said on this point (supra, 386, 387):
“The fact that the statute vested a discretion in the Attorne3’’-General to include or not to include, when he exercised the power to offer a reward, particular persons within the offer by him made, and that in the instant case the discretion was so availed of as not to include deputy marshals from taking the offered reward, renders it unnecessary to determine whether a deputy marshal is an officer of the United States within the meaning of section 1765 of the Revised Statutes and section 3' of the act of June 20, 1874, to which reference has already been made. As the reward was sanctioned by the statute making the appropriation and was embraced within the offer of the Attorney-General, it clearly, under any view of the case, •was removed from the provision of the statute in question. The appropriation act, being a special and later enactment, operated necessarily to engraft upon the prior and general statute an exception to the extent of the power conferred on the Attorney-General and necessary for the exercise of the discretion lodged in him for the purpose of carrying out the provisions of the later and special act.”
*51 In the case of The United States v. Jones (18 How., 92) it is said:
“ The Secretary of the Navy represents the President and exercises his power on the subjects confided to his Department. He is responsible to the people and the law for any abuse of the power intrusted to him. His acts and decisions on subjects submitted to his jurisdiction and controlled by the Constitution and laws do not require the approval of the officer of any Department, correcting the supposed mistakes or annulling orders of the heads of Departments.”
The case of Dyer v. The United, States (37 C. Cls. R.) arose under the naval appropriation act of March 3, 1897 (29 Stat. L., 618), under the heading “Pay miscellaneous,” among other things appropriated for “ maintenance of students and attaches, and information from abroad.” * * *
It was held in that case that the appropriation, so far as it relates to the maintenance of attaches, is in the nature of a contingent fund, and comes within the spirit if not the letter of the decision of the Supreme Court in the case of United States v. Jones (supra). It was also held in substance in that case that the form of the allowance was not a matter for judicial review.
Taking into consideration the general purpose for which the law was enacted, the terms of the statute in the grant of power to the President, and the necessity of the exercise of the largest discretion by the President, the court decides that the employment of the claimant, with a salary at the rate of $2,000 per annum, came within the purview of the law and the discretion of the President, and therefore the plaintiff is entitled to recover, subject to the deduction hereafter stated.
The payment to the claimant from the 28th of October, 1898, to April 11, 1899, as on the active list, in the opinion of the court, it having no necessary connection with the salary pay of $2,000- for the same period, was illegal, and for su'ch payment the defendants are entitled to reimbursement. • Accordingly, a judgment is ordered for the sum of $810.42, being the amount due claimant under his employment as shown in the findings, after deducting the overpayment of $68.75 which was paid him as on the active list, from the 28th day of October, 1898, to the 11th day of April, 1899.