## Trask *vs.* Payne.

An order of the war department, touching the arrest and detention of deserters, and specifying the persons who are authorized to make such arrests, should be construed strictly, and with the precise limitations which it prescribes.

Such an order should not be held to mean that the persons named therein may perform the special duty conferred, as they might some others, by procuration or delegated authority.

It is a case for the application of the maxim *expressio unius est exclusio alterius.*

Giving authority, in such order, to *sheriffs* to make arrests, will not authorize *deputy sheriffs,* as such, to arrest deserters.

Desertion is not a felony, at common law.

In England, the whole matter of desertion is the subject of statutory regulation; and in practice the jurisdiction of the offense is there wholly confined to the military courts.

Such is the rule in this country.  And except in military law, desertion is legally unknown to the tribunals of this country.

The extent of the right of a citizen to arrest another is when a felony has been committed in his presence.

A court can never be asked to charge upon the assumption of a fact not only not conceded, but which the testimony strongly tends to disprove.

THE complaint contains two counts: The first is for an assault and battery committed on the 22d day of January, 1863; and the second for wrongfully and maliciously imprisoning and assaulting, &c. the plaintiff the same day. The defendant answers the complaint and alleges that the plaintiff was a deserter from the military service of the United States, and that the defendant was a deputy sheriff, and under and by virtue of an order issued by the president

of the United States, through the secretary of war, he arrested him as a deserter; and that while he had him so arrested and he was in the discharge of his duty as such deputy sheriff, the plaintiff assaulted him, and that he then arrested and held him for the assault upon him as a public officer; and that such arrests of the plaintiff constitute the same assaults, &c. complained of in the complaint. The trial took place at the adjourned Herkimer circuit, before Hon. HENRY A. FOSTER, and a jury, in January, 1864.

The defendant, so far as he was permitted, gave his version of the various arrests, and attempted to justify them under the alleged order of the war department.

This order was "General Orders No. 92," dated "War Department, Washington city, July 31, 1862." The last paragraph of the order was as follows: "The United States marshals in the respective districts, the mayor and chief of police of any town or city, the sheriffs of the respective counties in each state, all post-masters and justices of the peace, are authorized to act as special provost marshals to arrest any officer or private soldier, fit for duty, who may be found absent from his command without just cause, and convey him to the nearest military post or depot. The transportation, reasonable expenses of this duty, and five dollars, will be paid for each officer or private so arrested and delivered."

*Roscoe Conkling,* for the plaintiff.

*R. Earl,* for the defendant.

BACON, J. There is no complaint in this case that the amount of the verdict is excessive, or that it was without sufficient evidence to support it. This could not well be said, because if the jury believed, as they had a right to believe, the testimony of the plaintiff, the case was one of great outrage and violence and gross indignity perpetrated on the person of the plaintiff. This cause is before us purely upon the

exceptions taken by the defendant's counsel upon the rulings in the course of the trial and upon the request and refusal to charge at the close of the evidence. It may be remarked here that the several propositions in the charge itself, to which exceptions are noted, are, with one or two exceptions, but re-statements of propositions which had already been ruled, and which had been substantially disposed of by the refusals to charge as requested by the defendant's counsel. Indeed I think the only propositions which had not before been announced were, that it had not been established that the plaintiff was a deserter at any time, and that it *prima facie* appeared that he was not a deserter at the time of the arrest in question. Now the only thing that was material was whether or not the plaintiff was a deserter at the time of the third arrest, for the abuse in respect to which this action is brought. The defendant's counsel argued that there was proof enough to go to the jury that the plaintiff was a deserter both at the time of the first and second arrests. Granting this to be so, that point is entirely immaterial; for, unless the fact is established or proof enough be given to warrant the jury in finding that the plaintiff was a deserter at the time the alleged outrage was committed, the justification of the defendant must fail. But not only does the proof of the defendant come short of establishing this, or raising a reasonable presumption of the fact, the statement of the court that it *prima facie* appeared that the plaintiff was not a deserter at that time, is, in my judgment, entirely sustained. The plaintiff, at the time of his arrest, held a sick leave of absence issued by the surgeon in charge of the hospital at Albany. The paper was proved to have been executed by the surgeon in charge of the hospital, and its authenticity was not questioned by the defendant. He only doubted whether it was a furlough because certain blanks in it were not filled up. The circumstances under which, and the persons by whom, these leaves of absence shall be granted, are purely matters of regulation by the war department,

and we are not to assume that the surgeon in charge of the hospital would undertake to execute a power which he did not possess. As regards third persons it must be deemed sufficient, and even against the government it would doubtless protect the holder from the penalties attached to desertion. The proposition then was correct that *prima facie* it was established that the plaintiff was not a deserter at the time in question, and the arrest and subsequent detention were wholly illegal and unauthorized; and if so, it is rather difficult to see how the defendant was harmed by the rulings upon the legal propositions stated by him, or would be benefitted if we should hold that the judge possibly erred in this part of his charge.

It should be added, further, in respect to some of the exceptions taken in the course of the trial touching certain offers and exclusions of evidence, that the defendant was allowed to swear upon the trial, that he believed the plaintiff was a deserter; that he believed he had a right to arrest him; that he had seen orders and hand bills respecting deserters, and that he had acted in entire good faith. This being so, some of the rulings on the trial were quite immaterial, since the only object of the evidence would be to show that the defendant acted on what he supposed to be reasonable grounds of suspicion, and in good faith, and he had the full benefit of all such presumptions with the jury. It was therefore immaterial to show the fact that the defendant had been informed that the plaintiff was a deserter before he returned home; and it was not only immaterial, but incompetent, within any rule of evidence, to allow the defendant to show that one post master had told him (the defendant) that another post master had informed the witness that the plaintiff was a deserter, and requested that the arrest might be made. The same remark applies to the offer to show that the sheriff had given the defendant a general injunction to arrest deserters. The sheriff had no authority to give any such instructions; but if relevant at all, it was only as bearing upon the good

Trask v. Payne.

faith of the defendant, and this he was allowed to testify to in the broadest terms, and to state, in substance, the grounds upon which it was founded.

This is all that need to be said in respect to the exceptions taken in the course of the trial, save the one at folio 65, where the court excluded the order of the war department touching the arrest and detention of deserters. The only material portion of the order was that embraced in the fifth section, which designates what parties are clothed by the department with the functions of special provost marshals, and as such, are directed to arrest any officer or private soldier fit for duty who is absent from his command without just cause. Now the defendant had been allowed to put in evidence the whole of this fifth section, and to testify in respect to it. The order was therefore substantially in the case, and the defendant had the full benefit of all the supposed immunity it gave him before the jury. The order was excluded, not on the ground of informality in form, or defect of proof of its genuineness. It was excluded as incompetent, that admitting it to be well executed and sufficiently authenticated, it formed no defense to the defendant for making the arrest.

This brings us to the discussion of the only exceptions that are of any importance in the case; those arising on the requests and refusals to charge, if indeed they are important, because, as I have already suggested, if the proposition is true that *prima facie* it appeared that the plaintiff was not a deserter, at the time of the arrest, then no order of the war department, even if addressed directly and specifically to the defendant, would be any protection to him; nor would a general power to arrest on the part of a public officer, in a case of felony, constitute a defense. The first and third propositions, to wit, that, as deputy sheriff, the defendant had power to arrest a deserter, and that any citizen has power to arrest any person who is actually a deserter, are founded an a *petitio principii*. They assume that he had the benefit of the order of the war department, and also that he had

proved the very fact which the defendant had failed to establish, and which was necessary to his defense, and the converse of which the plaintiff had established, as ruled by the court. But if we grant all that is necessary for the defendant to assume, in order to be entitled to ask the court to rule as law the propositions thus stated, I am of opinion that neither of them is sound. The order of the war department, it will be seen, is very precise and specific in naming the persons who are authorized to make these arrests. It was a large power to impart, and very likely to be abused, if not carefully guarded. Certain official functionaries are therefore selected and named, and they are the mayor and chief of police of any city or town, the sheriffs of the respective counties in each state, and all post masters and justices of the peace. The order should be construed strictly, and with the precise limitations which it prescribes. It can not mean that these parties could perform this special duty as they might some others, by procuration or delegated authority. It is a case for the application of the maxim, "*Expressio unius est exclusio alterius,*" and a deputy sheriff could no more perform this office by virtue of the fact that he was a deputy qualified to discharge as such certain other duties, than a deputy post master could undertake to do the same thing by virtue of his position as related to his principal. The order therefore did not reach the case, and conceding its full force and validity, formed no protection to the defendant.

The third proposition which the defendant's counsel asked the court to charge, is that any person has a right to arrest an actual deserter, and the reason given is that a deserter is a felon, and therefore any citizen has the right to make the arrest. I very much doubt whether, granting that the plaintiff by an act of desertion had committed a felony, the other proposition can be affirmed, to wit, that any citizen has the right to make an arrest. The extent of the right of a citizen to arrest is when a felony is committed in his presence, (*Barb. Cr. Law,* 477,) and this can hardly be assumed to be

Trask *v.* Payne.

such a case. But the proposition, in this shape, is not important, because it is conceded that the defendant in this case was a public officer, and he can undoubtedly make an arrest even upon the information of others, where a felony has been actually committed. Was the act of desertion then, assuming that it existed in this case, a felony at common law, or by any statute rendering the offender amenable to any civil jurisdiction ? I do not think either branch of this proposition, which is affirmed by the defendant's counsel, can be maintained. There is no authority, that I have been able to find, that holds desertion to be a felony at common law. On the contrary, Blackstone states (1 *Com.* 415, *Phil. ed.* 1863) that in England an annual statute is passed to punish mutiny and desertion and other military offenses, and committing the whole matter of trial and of punishment to the jurisdiction and discretion of courts martial. He refers indeed, to what he calls a standing law, (*18 Hen. VI, chap.* 9,) which makes desertion, in time of war, felony, and says the offense is triable before a jury ; but he is careful to add, that though the law remains in force, it is not attended to— in other words, it has become obsolete. So that in any aspect the whole matter of desertion in England is the subject of statutory regulation, and in practice the jurisdiction of the offense is there wholly confined to the military courts. And such is undoubtedly the rule in this country. The fifth article of the amendments to the constitution of the United States declares that " no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury, except in cases arising in the land or naval forces or in the militia when in actual service in time of war or public danger." This provision practically withdraws the entire catalogue of military offenses from the cognizance of the civil magistrate, and turns over the whole subject to be dealt with by the military tribunals ; and, except in military law, desertion is legally unknown to the

tribunals of this country. It does not in the contemplation of the civil law reach the grade of a misdemeanor, and no instance is known in which this alleged offense has been the subject of indictment by a grand jury, or of trial in any court of civil or common law jurisdiction. The judge was right, therefore, in refusing the request to charge as contained in the third proposition of the defendant's counsel.

The second request to charge can not, I think, be sustained as a legal proposition; but the court was right in refusing to charge it in the terms proposed, because it proceeded upon the assumption of a fact which did not exist, or which it could not be affirmed, had been proved. In declaring that the defendant was justifiable in arresting the plaintiff and holding him until he produced his furlough, it assumes that the plaintiff contumaciously refused to produce the furlough when requested, and that immediately upon its production the defendant released him from the arrest. The testimony of the plaintiff was, that on the occasion of his arrest, he supposed his furlough was at his house and that he unexpectedly found it in his pocket, and handed it to the defendant, who read it and pronounced it no furlough, and subsequently to this, attempted to place iron hand cuffs upon the plaintiff, bound his hands tightly with a cord, and kept him in that condition for many hours, leading him around and tying him up like a wild animal. The defendant, indeed, attempts to contradict this, and while not denying the substantial facts, pretends that this arrest and detention was for an alleged assault upon the person of the defendant. The jury had a right to disbelieve this version, and it was a bold proposition to ask the court to charge on the assumption that he alone had told the truth. A court can never be asked to charge upon the assumption of a fact not only not conceded, but which the testimony strongly tends to disprove. The request was entirely too broad, and was therefore properly refused.

Judgment should be rendered on the verdict in favor of the plaintiff.

MULLIN and FOSTER, JJ. concurred.

MORGAN J. dissented from the proposition that desertion is not a felony at common law, or by statute, being substantially so declared by the rules and articles of war; but he concurred in the result, on the ground that the plaintiff was not a deserter at the time of the arrest for which this action was brought.

Judgment for the plaintiff.

[ONONDAGA GENERAL TERM, April 5, 1865. *Mullin, Morgan, Bacon* and *Foster*, Justices.]