# SUPPLEMENT.

## In the Matter of the Application of Gurdon W. Russell.

It is well settled that a public officer, whose compensation is fixed or whose fees are prescribed by law, can not legally contract for or demand a larger compensation or higher fees, in the form of a reward or in any other form, for services rendered within the scope of his official duties.

Policemen of the city of Hartford are by law required, under a city ordinance and regulations established by the police commissioners, to report to the chief of police all suspicious persons and all violations of law within the city, to arrest without warrant persons guilty of criminal offences when the offenders are taken in the act or on the speedy information of others, and to render all possible assistance to the ministers of the law; also to constantly exert themselves to prevent the commission of crime and enforce the law for the protection of person and property during the time given them for rest as well as during their regular hours of duty. For this they receive a fixed salary and are forbidden by the ordinance to receive any other compensation or any present or reward. An inhabitant of the city whose house was broken into in the night offered a reward for the detection of the burglar. Certain policemen, during hours allotted them for rest and while off duty, discovered the burglar and obtained information which led to his conviction. Held that, to allow them to receive the reward, would be both in violation of the city ordinance and against public policy.

APPLICATION to the Superior Court in Hartford County for a determination as to what person or persons were entitled to a reward offered by the applicant for the detection of a burglar. The application was made under the statute (Gen. Statutes, p. 487, sec. 1,) which provides for the appointment of commissioners upon such an application, who shall hear all claimants for the reward and report their determination to the court. The case came, upon the report of such a committee, before *Hovey*, *J.*, at the September term, 1881. The case is fully stated in the opinion.

*W. Hamersley*, for the applicant.

*J. L. Barbour*, for the claimants.

HOVEY, J. The dwelling-house of the applicant, Dr. Gurdon W. Russell, in the city of Hartford, was burglariously broken and entered in the night of October 13th, 1881; and the burglar, while in the house, committed a violent assault upon a member of the applicant's family.

On the 19th of October, 1881, the applicant, by an advertisement published in one or more of the Hartford newspapers, offered a reward of one thousand dollars for information which would lead to the detection and conviction of the party who committed the burglary and assault. And at the criminal term of this court held on the first Tuesday of December, 1881, one John Thomas was prosecuted upon an information in behalf of the state for the assault, which was alleged to be an assault with intent to murder, and thereof was duly convicted.

The present application, praying for the appointment of commissioners to determine as to the payment of the reward, was thereupon brought; and at the January Term, 1882, this court appointed commissioners as prayed for in the application, and made an order limiting the time within which all persons claiming the reward should present to the commissioners their claims and prescribing the notice to be given of the order. The commissioners having complied with the order so made and having attended to the other duties of their appointment, submitted to this court on the 17th of October, 1882, their report in writing, in which they find that George F. Bill, Frank Ennis and William F. Gunn, policemen of the city of Hartford, obtained and gave the information which led to the detection and conviction of the said Thomas, and that they are entitled to the reward unless the fact that they were, at the time of giving the information, and now are, in the active employ and service of the city of Hartford as policemen, disentitles them to receive it. It was admitted upon the hearing of the report

Matter of Russell's Application.

that the information so given was sought for and obtained by the said policemen during hours allotted to them for rest or on days allowed to them for recreation, when they were not bound, unless called upon by their superior officers, to perform any official duty, and when, under the rules established for the regulation of the police department, they had a right to be "off duty." And these facts, by agreement of the parties, are to be considered as part of the report and are to have the same effect as if they had been embodied therein.

The question for determination, therefore, is, whether the fact that the said Bill, Ennis and Gunn were policemen of the city of Hartford, though not bound to perform any service as such at the time they sought for and obtained the information for which the reward was offered, precludes them from demanding and recovering the reward.

By the common law no public officer may take any other fees or reward for doing any thing relating to his office, than some statute in force gives him, or such as have been anciently and accustomably taken, and if he does he is guilty of extortion. Dalt., c. 41; 2 Burn's Justice, 261; 1 Russ. on Crimes, 208. It seems, however, that anciently an officer who took a reward which was voluntarily given to him and which had been usual in certain cases, for the more diligent and expeditious performance of his duty, was not considered guilty of extortion; for without such a premium it would have been impossible in many cases to have had the laws executed with vigor and success. 2 Bac. Abr., 453; 2 Inst., 210; 3 id., 149; Co. Litt., 368; 1 Russ. on Crimes, 208. But it has been held from a very early period that a promise to pay an officer a sum of money for doing a thing which the law will not suffer him to take any thing for, is merely void, however freely and voluntarily it may appear to have been made. Roll. Abr., 16; Roll. Rep., 313; 2 Bac. Abr., 453; *Batho* v. *Salter*, Latch, 54; *S. C.*, W. Jones R., 65. And it is now well settled that a public officer whose compensation is fixed or whose fees are prescribed by law, cannot legally contract for or demand a

larger compensation or higher fees, in the form of a reward or in any other form, for services rendered in the line or scope of his official duties. *Bridge* v. *Cage*, Cro. Jac., 103; *Slatesbury* v. *Smith*, 2 Burr., 924; *S. C.*, 1 Blackst., 204; *Callagan* v. *Hallett*, 1 Caines, 103; *Weaver* v. *Whitney*, Hopk., 13; *Hatch* v. *Mann*, 15 Wend., 44; *Smith* v. *Whildin*, 10 Penn. St., 39; *Gilman* v. *Lewis*, 12 Ohio, 281; *Stamper* v. *Temple*, 6 Humph., 113; *Pool* v. *Boston*, 5 Cush., 219; *Means* v. *Hendershott*, 24 Iowa, 78; *Merrill* v. *Quarles*, 35 Ala., 544; *Brown* v. *Godfrey*, 33 Vt., 120; *Davies* v. *Burnes*, 5 Allen, 349. If, therefore, the services rendered by the said Bill, Ennis and Gunn were in the line or scope of their duty as policemen, they are not entitled to the reward. It becomes necessary, under these circumstances, to ascertain what the duties of policemen of the city of Hartford were, at the time or times when those services were rendered. The office of policeman is not known to the common law; it is created by statute, and such an officer has and can exercise such powers and such powers only as he is authorized to exercise by the legislature, expressly or derivatively. But a municipal corporation, with the authority of the legislature, may impose upon its police officers such duties and prescribe such rules and regulations for their conduct and government, not inconsistent with its charter or the general laws of the state, as it may deem fit.

The duties of policemen of the city of Hartford are prescribed by ordinances passed by the court of common council, and by rules and regulations adopted by the board of police commissioners, for the government of the police department of the city, in pursuance of the provisions of the city charter. The ordinances declare that it shall be the duty of policemen to obey such lawful orders and directions as they shall receive, from time to time, from their superior officers; to guard the city day and night; to report to the chief of police, through the captain of police, all violations of any law of the state or of the city ordinances, all suspicious persons, all houses of ill-fame, all brokers' shops and shops for the purchase and sale of second-hand

articles, all gaming houses, and all disorderly and suspicious places of resort; to preserve the public peace, serve criminal process, and arrest, without previous complaint and warrant, all persons guilty of criminal offences, when such offences shall be committed within the jurisdiction of the police court and when the offenders are taken and apprehended in the act or on speedy information of others; to render all possible assistance to the ministers of the law; and to do many other acts and things not necessary for the purposes of this case to be enumerated. And by the rules and regulations adopted by the police commissioners for the government of the police department of the city, every member of the police force is bound to give his whole time and attention to the business of the department and must not follow any other calling or business. He is required, during the night season, to examine carefully all the doors, gates and low windows on his beat, where in his opinion extra care is needed, and see that they are properly secured. He must, if possible, fix in his mind the appearance and ascertain the names and business of persons whom he frequently meets in the streets late at night, and if he notice anything suspicious in their behavior, must report the same to the chief of police. He must strictly watch the behavior of all persons of known bad character, especially recollecting the time and place of their appearance on his beat, and the places, if any, visited by them, and take notice of and report anything suspicious that may occur upon his beat. He must constantly use his exertions to prevent the commission of crimes and misdemeanors, and enforce the law for the protection of person and property during the time given him for rest the same as during his regular hours of duty; and although certain hours are allotted to him for ordinary duty, he must at all times be ready to act when called upon. For services rendered in the performance of these duties, each policeman is entitled, by the city ordinances, to receive pay from the city treasury at the rate of one thousand dollars per annum, payable monthly; and he is not allowed, but is expressly forbidden

by the ordinances, to demand, accept or receive any other compensation, or any present or reward, except in cases where he is detailed by the chief of police to render services for parties other than the city of Hartford and citizens of the same, when the crime has been committed within the limits of the city; and in those cases he is allowed to receive only such sums as are fixed by the board of police commissioners; and the sums received he is required to pay over to the secretary of that board.

There is no provision in the ordinances of the city or in the rules and regulations of the police commissioners which, *in express terms*, makes it the duty of policemen, after a crime has been committed within the city limits, to make inquiry or search for evidence or information which will lead to the detection and conviction of the criminals. The chief or captain of police may, however, by an order or a direction to the policemen for the purpose, require them to perform that service and make it their duty to perform it; and the duty arises by implication from that provision in the city ordinances which requires all policemen to render to ministers of the law all possible assistance, as well as from other provisions and the general objects and purposes of the police department.

The duty of inquiring into charges of crime, preferred against persons committed to the station house in the city, is specially devolved upon the chief of police, and in case of his absence or disability, upon the police captain; and when both are absent or under disability, upon the lieutenant of police. The chief is also required to receive from any subordinate member of the police force and from every other person all complaints of violations of any law of the state or ordinances of the city, and see that the same be prosecuted according to law; clearly implying that policemen are to inquire into cases of crime which come to their knowledge, obtain such information respecting them as they can consistently with the duties, if any, which are specifically assigned to them, and communicate the information so obtained to the chief, so that he may prosecute the guilty

parties or cause them to be prosecuted according to law. In cases of crime generally, especially cases which come to the knowledge of any grandjuror of the town of Hartford, the duty of making the necessary inquiry and complaint is devolved upon him under the General Statutes; and in those cases, the grandjuror, being a minister of the law, has the right to call upon policemen to assist him in the performance of his duty; and the policemen, when called upon, are bound to render him all possible assistance.

But it does not appear from the report of the commissioners that the claimants Bill, Ennis and Gunn were called upon, either by the chief, captain or lieutenant of police or by any grandjuror, to render them or either of them assistance in obtaining the information for which the reward was offered. They entered upon the service voluntarily, and performed it successfully, at times given them for rest or allotted to them for recreation, and when they had a right, if they chose, to be "off duty," and, consequently, were under no obligation to perform any official duty. And they claim that under those circumstances the service they rendered was performed in their individual capacity, not as members of the police force, and that they are, therefore, entitled to receive the reward. But the claim finds no support in the ordinances of the city or in the regulations of the board of police commissioners, but is in direct hostility to the letter and spirit of both. And the claimants referred to no authority in support of the claim. There are cases in which it has been held that it was not against public policy to allow police officers to receive rewards for information that led to the conviction of parties for crimes committed within the precincts of those officers, because it was no part of the duty of those officers in those cases to search for and, if possible, to obtain such information. Those decisions, therefore, are not sufficient to sustain the right of the claimants to recover in the present case, and would not be, if the obstacles created by the ordinances of the city of Hartford and the regulations of its board of police commissioners were removed. And no case can be

found—at least, I have not been able to find any—in which the claim of a public officer to recover a reward for services rendered in the performance of his official duties has received the sanction of a court of last resort, in this country or in England.

In the case of *England* v. *Davidson*, 11 Ad. & El., 856, the defendant, whose mansion house had been feloniously entered, offered, by a hand-bill, placard or an advertisement, a reward of fifty pounds to whoever would give such information as should lead to the conviction of the felon. The plaintiff, who was a constable and police officer of the district in which the defendant's house was situated, obtained and gave such information as led to the conviction of the person who committed the felony. The defendant paid to the plaintiff five pounds and five shillings, part of the reward offered, but refusing to pay the residue, was sued by the plaintiff, in an action of assumpsit, to recover it. The defendant pleaded to the action that the plaintiff, at the time the felony was committed and when he obtained the information for which the reward was offered, was a constable and police officer of the district where the felony was committed, and that it was his duty as such constable and police officer to give every information which might lead to the conviction of the felon without any payment or reward; and the plaintiff demurred to the plea. Counsel for defendant in arguing the demurrer claimed that no consideration was shown on the record for the defendant's promise to pay the reward; that the plaintiff was bound to do that the doing of which was stated as the consideration—the duty of a constable being to do his utmost to discover, pursue and apprehend felons—and that the contract declared on was against public policy. Counsel for the plaintiff suggested that as constable the plaintiff was not bound to procure evidence. The court, adopting apparently this suggestion, overruled the demurrer and gave judgment for the plaintiff. Lord DENMAN, C. J., in giving the opinion of the court, said:—" I think there may be services which the constable was not bound to render,

and which he may therefore make the ground of a contract. We should not hold a contract to be against public policy unless the grounds of so deciding were very clear;" and LITTLEDALE, PATTESON and COLERIDGE, Js., who sat with the Chief Justice in the case, concurred in this opinion.

In the case of *City Bank* v. *Bangs*, 2 Edw. Ch., 94, the banking house of the plaintiffs in the city of New York having been entered and a large sum of money stolen therefrom, a reward was offered for the apprehension of the thief and the recovery of the stolen money. The sheriff of the county, his son, and a third person, who were public officers attached to the police department, acting upon information given them by the defendant Bangs, found the stolen money and apprehended the thief. The defendant Bangs claimed the reward on the ground that he had given the information that led to the discovery of the thief and money, and the officers claimed it on the ground that they had found the money and restored it to the plaintiffs and had apprehended the thief. The court held that Bangs was entitled to the reward; but, in giving the reasons for the decision, the Vice Chancellor referred to the claim of the officers and made the following observations upon it:— "Their" [the officers'] "general duties as such, are to arrest persons chargeable with offences of a criminal nature and to bring them before a magistrate for examination. They are also to search for stolen property, and, when discovered, to take possession thereof, with a view to its being restored to the rightful owner. For their services in the discharge of such duties they are entitled to a stated compensation or to certain fees allowed by law. It has been contended that public officers ought not to be permitted to receive gratuitous rewards because they are bound to a prompt and vigilant discharge of their duties without the hope or expectation of being thus compensated; the policy of the law, which has in view the safety of the community, is said to be against it; and self-interest, if they are allowed to participate in rewards as a remuneration for services, will cause them to be indifferent and even remiss, until

prompted by what they themselves may deem a sufficiently liberal offer; so that no active exertion will be made to arrest felons or to recover stolen property without an incentive of this sort. There is considerable force in this argument; and some illustrations have been given which show how the practice of allowing public officers to participate in rewards may lead to abuse. Still, I am not prepared to say they should be entirely excluded. Rewards are offered only when it is supposed the ordinary means of· discovery and detection would prove ineffectual. They are voluntary offerings and adapted to what the party making the offer deems to be the necessity and urgency of the occasion. The object is to awaken public attention to the· subject, excite vigilance and call forth extraordinary individual efforts for the accomplishment of the end proposed to be gained. All who choose to engage in it are at liberty to do so; and he who succeeds becomes entitled to the reward upon the ground of his superior vigilance or sagacity or his having used greater exertions or encountered dangers which others were disinclined or not in a situation to hazard. When, therefore, we view the object of rewards, offered thus publicly, in their true light, a participation in their benefits or in the receipt of them cannot be considered wholly incompatible with the duties of public officers or against the policy of the law."

In the case of *Smith* v. *Whildin*, 10 Penn. St., 39, the court, after stating it to be the duty of constables to· pursue, search for and arrest offenders against whom criminal process is put into their hands, observes that " there are things which a constable is not officially bound to do, such as to procure evidence and the like, and for this, perhaps, he may be allowed to contract." But the court adds:— " And this is the full extent of the principle in the case cited from 11 Ad. & El., 856. But it has been held that even a sailor cannot recover for extra work in managing the ship in peril, the sailor being bound to do his utmost, independently of any fresh contract. *Stille* v. *Myrick*, 2 Campb., 317, and the cases there cited. It would open the door to

profligacy, chicanery and corruption, if the officers appointed to carry out the criminal law were permitted to stipulate by private contract; it would also open a door to the escape of offenders by culpable supineness and indifference on the part of those officers, and compel the injured persons to take upon themselves the burden of public prosecutions. It ought not to be permitted. Constables must do their utmost to discover, pursue and arrest offenders within their township, district or jurisdiction, without other fee or reward than that given by the law itself."

In *Smith* v. *Moore et al.*, 1 Man. Gr. & Scott, 438, which was an action of assumpsit to recover a reward of twenty pounds publicly offered by the defendants to any person who would give such information as should lead to the apprehension and conviction of the party or parties who had broken into, robbed and set fire to the defendants' premises, the plaintiff, who had been a constable belonging to the police force of the county in which the premises were situated, but who was under a temporary suspension from his office, suspecting a man named Bridges to have been concerned in the robbery, apprehended him, and thereupon he volunteered to make some disclosures relative to the affair if something were given him to eat and drink. Meeting with a sub-inspector of the police force, the plaintiff communicated to him what Bridges had proposed. The sub-inspector thereupon went with the plaintiff and Bridges to a neighboring public house, where the latter, having been provided with refreshment, made a voluntary confession as to the share he had had in the perpetration of the crime, which resulted in his conviction. The jury, under the instructions of the court, returned a verdict in favor of the plaintiff for the amount of the reward; and a rule for a new trial was refused.

In *Neville* v. *Kelly*, 12 Com. Bench, N. S., 740, the defendant had caused to be published an advertisement stating that certain property had been stolen by a boy aged fourteen years, a description of whom was therein given, and offering a reward of ten pounds to whoever would give

such information as would lead to a recovery of the property and the apprehension of the thief. The plaintiffs, who were policemen of a certain district, before the advertisement was published apprehended the boy in that district, having in his possession the stolen property, and upon information given by the plaintiffs he was subsequently convicted of the theft and the property was recovered by the defendant. The plaintiffs thereupon demanded payment of the reward of the defendant, and, upon the latter's refusal to pay it, sued him in an action of assumpsit for its recovery. The defendant pleaded—first, that he did not promise as alleged in the plaintiffs' declaration;—second, a denial that the plaintiffs gave such information as led to the recovery of the property and the apprehension of the thief; —third, that before the advertisement offering the reward sued for was published the plaintiffs apprehended the boy who stole the property and kept him in custody until after the publication of the advertisement; and that although the plaintiffs were informed, before the publication, that the boy had absconded with the property from the service of the defendant, and knew where the defendant was to be found, they neglected, contrary to their duty, to inform him of such apprehension, and the defendant, in ignorance of the apprehension, published the advertisement. The plaintiffs replied to the third plea, that before and at the time of the apprehension of the boy they were policemen of a certain district named, and that they apprehended the boy within that district in pursuance of their duty as such policemen, informed the chief superintendent of the police of what they had done, and of all the circumstances which had come to their knowledge concerning the theft, within a reasonable time; that the superintendent of police, in consequence thereof and at their request, informed the defendant within a reasonable time and after the publication of the advertisement, that the boy had been apprehended by the plaintiffs; that such information could not reasonably have been given by the plaintiffs to the said superintendent before it was given, and could not reasonably have been

given to or received by the defendant before it was given and received, or before the publication of the advertisement; that according to the rules of the police department it was the duty of the plaintiffs as policemen to inform the said superintendent of the apprehension of the boy, and that it would have been contrary to their duty and a disobedience of those rules if they had informed the defendant thereof except through and by the said superintendent, and that it was the duty of said superintendent to give that information to the defendant; and that the plaintiffs and said superintendent performed their duty in the premises and did not act contrary thereto. To this replication the defendant demurred, and in support of the demurrer he claimed, among other things, that there was no consideration to support the promise to pay the reward. But he did not rest this claim upon the ground that it was against public policy to allow a police officer to contract or sue for a reward, but solely upon the ground that the plaintiffs did nothing in consequence of the advertisement of the defendant, as the thief was already in custody. The court overruled the demurrer, but the issue of fact was not tried, as the defendant had become insolvent.

In the case of *Bent* v. *The Wakefield & Barnsley Union Bank,* 4 Law Reps., Com. Pleas Division, 1, one Glover, a shoddy and mungo dealer, absconded from the place where he had carried on his business, after committing various forgeries on several manufacturing firms, and the defendants, by a published hand-bill, offered a reward of two hundred pounds to any person or persons giving such information to either of two superintendents of police named as would lead to his apprehension. A few days after the publication of the handbill, Glover presented himself at a police office and inquired for the plaintiff, who was the chief constable of the place where the police office was situated, and on the appearance of that officer, said to him: "You hold a warrant for me: I am wanted for forgery." The plaintiff asked his name and who he was, and he replied: "You know already and hold the warrant."

After some further conversation the plaintiff searched the police gazette and finding the name "William Glover, wanted for forgery," got him to take off his hat and satisfied himself that he was the man that was wanted. He then telegraphed to one of the superintendents mentioned in the defendants' handbill, asking him if he held a warrant for the apprehension of Glover for forgery, and received a telegram in reply that he still held such a warrant and should like to have Glover apprehended. And upon that the plaintiff apprehended him, and he was ultimately convicted. The plaintiff afterwards brought an action against the defendant to recover the reward. Upon the trial of the action the defendant set up two defences; first, that Glover himself, and not the plaintiff, had given the information for which the reward was offered; second, that on grounds of public policy the plaintiff was not entitled to recover the reward. The first defence was sustained by the court. But in respect to the second defence the judge who tried the cause said:—"On the question of public policy I am bound by the case of *England* v. *Davidson*, so far as the judgment in that case extends, and although there may be some distinction as to this point between that case and the present, yet, in deciding a case on the ground of public policy, the decision should be based on some broad principle and one capable of general application. I am unable to see any general principle other than that argued in *England* v. *Davidson*, namely, that a constable is bound by his duty, the duty of his office, to seek for criminals and to use his utmost efforts to bring them to justice. There are strong arguments of expediency, touching the administration of justice and the interest of the state, why constables should not be allowed to receive rewards. The expectation of rewards would offer great temptation to delay an active search, by which delay the criminal might escape, or in a case like the present, to delay taking into custody a criminal who gives himself up, so that the constable might appear to use exertions to procure complete information, and for that to claim the reward. There would also be a

temptation, particularly to those constables in the detective service, to look to bribes or to seek promises of reward from persons anxious to recover their property, and unless such were offered to be inert in their efforts. But, although the judgment in *England* v. *Davidson* does not enter upon these questions, I must assume that they were present to the minds of the judges who decided that case. Whatever my own opinion may be, it seems to me that I cannot, without over subtle refinement, apply to this case any general principle of public policy which is not involved in that case, and that the decision, if it is to be reviewed, must be reviewed in a court of appeal."

In looking at the case of *City Bank* v. *Bangs*, one of the cases to which I have referred, it will be noticed that the observations of the Vice Chancellor in the course of his opinion, so far as they appear to be favorable to the right of the claimants to recover in the present case, were made upon the strength of a decision of the Supreme Court of the state of New York in the case of *Hatch* v. *Mann*, 9 Wend., 262, in which it was held that an officer whose duty it was to serve process, might recover compensation over and above the fees allowed by law, when, on a promise of a reward, he uses extraordinary efforts beyond those which an officer is strictly bound to make or which could legally be required of him. But that decision, having been reversed by the court for the correction of errors, as appears from the report in 15 Wend., 44, the force of the observations of the learned Vice Chancellor is greatly weakened, if not totally destroyed.

In the case of *England* v. *Davidson* the court did not intend to abrogate or impair the just and wholesome rule already stated, that a public officer whose compensation is fixed or whose fees are prescribed by law, cannot legally contract for or demand a larger compensation or higher fees, in the form of a reward or in any other form, for services rendered in the line or scope of his official duties. And I cannot presume that the learned judge who presided at the trial of *Bent* v. *The Wakefield & Barnsley Union Bank*, and

whose opinion was controlled by the decision in *England* v. *Davidson*, had any such intention. The courts, in both cases, notwithstanding the expressions used in that opinion, intended to go no farther than to hold that a police constable or other police officer, though bound to search for and arrest offenders against whom criminal process is put into his hands, and to do with the offenders when arrested what the process commands, is not bound to search for and procure evidence or information which will lead to their conviction of the offences with which they are charged. These cases, therefore, cannot, nor can the other English cases referred to, be made the basis of a judgment in favor of the claimants for the reward sought to be recovered in the present case. But the claimants must recover, if at all, upon the ground that in obtaining and giving the information for which the reward was offered, they acted as private individuals and not within the line or scope of policemen's duty; and that they have the same right to demand and recover the reward as private individuals would have had for rendering the same service. They cannot, however, maintain their right to recover upon that ground. For although they performed the service for which the reward was offered at times given them for rest or recreation, they were nevertheless policemen of the city, and as such were drawing pay from the city treasury, for the whole time, at the rate of one thousand dollars per annum. They were not bound to perform the service during those times, because they were excused from the performance of any official duty on all such occasions unless thereto required by the chief of police; but the service performed was in the line of policemen's duty, and having volunteered to perform it, they cannot be permitted to say that they did so as private individuals, but must be deemed to have acted as policemen of the city in assisting the ministers of the law upon whom the duty specially devolved. But if the service had not been in the line or scope of policemen's duty, the claimants would have had no right, but were forbidden by the city ordinances, to contract for or undertake its perform-

ance for pay, hire, reward, or compensation of any kind whatsoever, or to demand, accept or receive any compensation or reward for the service when rendered. Under these circumstances, it would be manifestly against public policy as well as in violation of the ordinances of the city, to allow them to receive the reward.

These views, so far as they relate to the question of public policy, are fully sustained by the decision of the Supreme Judicial Court of Massachusetts in the case of *Davies* v. *Burns et al.*, 5 Allen, 349. That was an action to recover a reward offered by the defendants, who were the owners of a line of steamships plying between a European port and Boston, for information of goods smuggled or intended to be smuggled therefrom. One of the ships called the Canada arrived, soon after the reward was offered, at her wharf in East Boston, in the night time. The plaintiff, who was a day inspector duly appointed under the laws of the United States regulating such officers, was not assigned to this ship at that time, (four other inspectors having been so assigned, which was the complement required,) but was as a day inspector to another vessel. It was no part of the ordinary duty of a day inspector at that time to take charge of vessels in the night time or to give information of smuggling to the agents or officers of the defendants' ships. The plaintiff went on board of the Canada upon her arrival and his attention was attracted by the conduct of three of the passengers whom he examined; and he found concealed upon their persons and in their luggage a quantity of dutiable goods of the value of more than four hundred dollars, which were not entered on the ship's manifest. These goods were secured until the next day, when they were seized by the chief inspector assigned to the ship. In the morning of that day and before any legal process had issued against the goods or passengers, the plaintiff gave information to the defendants' agent of the facts and informed him that he should claim the reward. The passengers who had concealed the goods were afterwards, on the same day, arrested; and subsequently they

were tried and convicted for smuggling, and the goods were forfeited. The defendants refusing to pay the reward to the plaintiff were sued by the latter in this action for its recovery. But the court gave judgment for the defendants. HOAR, J., in giving the reasons for this decision, after expressing a doubt whether the facts brought the case within the offer of the reward, says:—"But upon the broader ground of public policy the plaintiff cannot maintain his action. At the time he found the smuggled goods he was an officer of the customs of the United States, and although not in discharge of a specific duty assigned him, was acting in the service of the government as a volunteer, in assisting the inspectors who had charge of the steamer, and upon whom the charge of examining the passengers and their baggage devolved. His only right to be present and interfere with the passengers at all was by virtue of his official position. He acted as a revenue officer, and, so acting, it was his duty to detect, if possible, and expose any violation of the revenue laws, without other compensation than that which attached to his office." The learned judge concludes by saying:—"It is against public policy to allow a man to receive a reward for doing his duty as a public officer; and upon the facts agreed there must be judgment for the defendants."

If the law were otherwise, and especially if it were as the claimants in the present case seem to suppose, any police officer of a city, who, while "off duty," should discover an incendiary setting fire to a building, or a burglar breaking and entering a dwelling house, or any wicked and evil disposed person committing a felony of any other kind within the city limits, would be entitled to demand and recover a reward, if one had been previously offered by the city or by individuals, for the apprehension of the felons, or for information which would lead to their apprehension, or to their detection and conviction, on complying with the conditions of the reward, notwithstanding the compensation paid to such officer from the city treasury for the performance of his official duties. And upon the same principle a

policeman might, without breach of official duty, withhold from his superior officers the information so obtained because it was obtained while he was "off duty," and might thus shield criminals of the worst description from prosecution and punishment. Such a principle cannot receive the sanction of a court of justice. A policeman who, whether on duty or off duty, obtains, within the territorial jurisdiction of the police department, information which will lead to the conviction of perpetrators of crime therein, is bound, without other compensation or reward than that given by the law, to communicate it to the chief of police or the officer acting in his position, in order that the criminals may be prosecuted and be made to suffer the penalties due to their crimes. To withhold such information would be a flagrant breach of duty and should subject the delinquent policeman, if to no greater punishment, to summary expulsion from office.

The conclusion is, that the contract upon which the claim of the said Bill, Ennis and Gunn is founded, was in violation of the ordinances of the city of Hartford and against public policy. It necessarily follows that the said claimants are not entitled to the reward offered by Dr. Russell, and cannot have judgment for its recovery.