Peelle, J.,
delivered the opinion of the court:
The one question presented in this case is whether the claimants, for services rendered by them as United States deputy marshals in making the arrest, are entitled to recover the reward of $500 offered therefor by the Attorney-General, as set forth in the findings.
In the Act March 3, 1891 (26 Stat. L., 948, 985), making appropriations for the sundry civil expenses of the Government for the year ending June 30,1892, the following appropriation and provision were contained:
“Prosecution of crimes: For the detection and prosecution of crimes against the United States, preliminary to indict *131 ment, * * * under the direction of the Attorney-General, * * * thirty-five thousand dollars.”
Under the provisions of that statute the Attorney-General directed the following letter to E. C. Weeks, esq., then United-States marshal for the northern district of the State of Florida:
“Department oe Justice,
“ Washington, D. G., July 31,1891.
“E. 0. Weeks, Esq.,
“ Jacksonville, Fla.
“Sib: Your letter of July 24 is received. You are author-. ized to offer a reward of $500 for the arrest and delivery to you, at Jacksonville, of Asa McNeil, chief of the conspirators who fired upon revenue deputies at Bonifay, Holmes County, last fall. This reward to be paid upon the conviction of said McNeil.
“Very respectfully,
“W. H. H. Millee,
1 ‘ Attorney-General.”
On the 11th July, 1892, the person named in that letter was arrested by the claimants and delivered into the custody of the United States marshal before a United States commissioner, and on the 29th October following he was tried and convicted.
The defendants’ first contention is that the arrest was made by the claimants as officers, in a branch of the public service, whose pay was fixed by law, and that such services came within their official duties, for which no additional pay can be allowed by reason of Revised Statutes, section 1765, and the act of June 20, 1874, section 3 (1 Supp. to R. S., 2d ed., p. 18), which read:
“ Sec. 1765. No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.”
Act June 20,1874:
“That no civil officer of the Government shall hereafter receive any compensation or perquisites, directly or indirectly, from the Treasury or property of the United States beyond his salary or compensation allowed by law:
11 Provided, That this shall not be construed to prevent the employment and payment by the Department of Justice of *132 district attorneys as now allowed by law for tbe performance of services not covered by tbeir salaries or lees.”
The defendants’ second contention is that the “ arrest and delivery” by the claimants were within the scope of their official duties, and that therefore the payment of the reward to them would be against public policy.
Deputy marshals are authorized to be appointed by the marshals in their respective districts, as provided by Revised Statutes, section 780, which is as follows:
“Every marshal may appoint one or more deputies, who shall be removable from office by the .judge of the District Court, or by the Circuit Court for the district, at the pleasure of either.”
By Revised Statutes, section 782, marshals and deputy marshals are required to take the same oath, while by Revised Statutes, section 788, marshals and their deputies are given the same power “in executing the laws of the United States as the sheriffs and their deputies in such State may have by law in executing the laws thereof.”
In respect to the maximum compensation of deputy marshals, Revised Statutes, section 841, provides:
“* * * The allowance to any deputy shall in no case exceed three-fourths of the fees and emoluments received or payable for the services rendered by him, and may be reduced below that rate by the Attorn ey-General whenever the returns show such rate to be unreasonable.”
By that statute the Attorn ey-General is authorized to reduce the rate of allowance to deputy marshals below three-fourths of the fees for services rendered by them “ whenever the returns show such rate to be unreasonable,” but he is not thereby authorized to fix their salary or pay.
This was the construction given to the statute in the Phillips Case (11 C. Cls. R., 570, 574).
Soon after that decision the Department of Justice promulgated a regulation (1876, p. 202) limiting the compensation of deputy marshals to $3,000 per year. (See case Schloss v. Howlet, 81 Ala., 269.)
In speaking of the distinction between a guard at the jail, who received a regular salary fixed by the Secretary of the *133 Interior (5 C. Cls. R., 523), and a deputy marshal, the court in the Phillips Case (supra) said:
“* * * The guard was receiving a regular salary from the Government, but this deputy marshal received no salary or pay of any kind from the Government, but only a certain proportion of the emoluments earned by him for the marshal, to be paid to him by the latter out of those emoluments.” (See the case United States v. Meigs, 95 U. S., 748.)
° Still more conclusive on this point is the case of Douglas v. Wallace (161 U. S., 346, 348), where it is said:
“Although deputies are recognized by law as necessary to the proper administration of the marshal’s office, they receive from the Government neither salaries nor fees, and the Government has no dealings with them. The accounts are rendered by the marshal, who charges not only for his own services, but for those of each of his deputies, who are appointed by the marshal personally, and are accountable to him alone, though subject to removal by the court at its pleasure. * * *
“Their claims for services against the marshal stand upon the same footing as those of an ordinary employee against his employer, and are not even contingent upon the marshal collecting his own accounts against the United States.”
So that, in respect to the compensation of deputy marshals, whether they be considered as officers in a branch of the public service or otherwise, their pay is not fixed by law or regulation, nor are they paid any sum out of the Treasury of the United States for services rendered by them; hence, in this respect, whatever their relation may otherwise be, there is no privity between them and the United States.
The question as to what constitutes an officer under the Constitution of the United States was considered by the court in the case of The United States v. Germaine (99 U. S., 508), following which the court in the later case of The United States v. Mouat (124 U. S., 303, 307) said:
“In that case it was distinctly pointed out that, under the Constitution of the United States, all its officers were appointed by the President, by and with the consent of the Senate, or by a court of law, or the head of a Department; and the heads of the Departments were defined in that opinion to be what are now called the members of the Cabinet.”
This same question was considered by this court in the recent case of Baxter (ante, p. 75).
*134 Although a deputy receives his appointment from the marshal, to whom he is alone responsible, such appointment as well as the qualification and duties of such deputy are authorized by law, not, however, for the purpose of enabling such deputy to carry into effect any duties devolving upon him as such, but “as necessary to a proper administration of the marshal’s office.” True, if a deputy be resisted by any one in the execution of a warrant or other process as defined in Revised Statutes, section 5398, such person would be liable to indictment thereunder, as a deputy marshal is an officer within the meaning of that section to serve process, as is also the keeper of a State jail into whose custody a person has been committed by legal process issued by a United States judge. (United States v. Tinglepaugh, 3 Blatch., 425; United States v. Martin, 14 Fed. R., 817; see also Wright & Wade v. United States, 158 U. S., 239.)
Deputy marshals have been held amenable to the law for a violation of their duties as such (United States v. Strobach, 48 Fed. R., 902), and they may perhaps be held liable to an attachment for contempt for not paying over money withheld in violation of their duties, as they are in a sense officers of the court and subject to removal thereby. (S. Dist. N. Y., 1849; United States v. Lawrence, 7 N. Y. Leg. Obs., 174.)
Certain it is, however, that a deputy marshal is not an officer “or any other person whose salary, pay, or emoluments are fixed by law or regulation,” as provided in section 1765, nor is he a civil officer receiving from the United States “ a salary or compensation allowed by law,” as provided by the Act June 20, 1874 (supra).
The compensation to be paid a deputy is a matter of agreement between him and the marshal appointing him; but that the marshal shall not receive credit in the settlement of his emolument accounts for a sum in excess of “a proper allowance to his deputies” it is provided that a deputy shall not be paid a sum in excess of “ three-fourths of the fees and emoluments received or payable for services rendered by him.”
The limitation is rather upon the marshal than upon the deputy, as the material purpose of the statute evidently was that the marshal, in making his emolument returns, as required by Revised Statutes, section 833, shall include therein at least *135 one-fourth of tbe “fees and emoluments” accruing for services rendered by such deputy, to the end that there shall be no door left open for abuse through the earnings of his deputies by which he might thereby increase his maximum compensation.
The purpose of section 1765, as well as of the act June 20, 1874, evidently was that officers in any branch of the public service who were receiving from the Treasury of the United States a fixed salary or other compensation allowed by law should not receive therefrom any additional compensation in any form whatever, except as stated in the several acts which are not applicable in this case. (Hoyt v. United States, 10 How., 109, 141, and United States v. Sanders, 120 U. S., 126, 129.)
But as the claimants in this case received from the Government neither salaries, fees, nor other compensation, those statutes are not applicable to them.
Were they officers upon whom devolved the official duty of making the arrest and delivery of the person for whom, coupled with his conviction, the reward was offered, and, if so, would the payment of the reward to them or either of them be against public policy — the policy of the law — so earnestly contended for by the defendants.
A public officer can not, in the absence of a statute or an appropriation therefor, recover a reward offered if the services performed in connection therewith come within the scope of his official duties, as the payment of a reward in such cases is against public policy. (Gilmore v. Lewis, 12 Ohio, 281; Bronnenberg v. Coburn, 110 Ind., 169; Harris v. Beaven, 11 Bush (Ky.), 113; Pool v. Boston, 5 Cush. (Mass.), 219; Warner v. Grace, 14 Minn., 487; Day v. Putnam Ins. Co., 16 Minn., 408; In re Russell, 51 Conn., 577; Davis v. Burns, 5 Allen (Mass.), 349; Ring v. Derlin, 68 Wis., 384.)
As was well said by the court in the case of Bent v. Wakefield, etc., Bank (4 C. P. Div., 6):
“There are strong arguments of expediency, touching the administration of justice and the interest of the State, why constables should not be allowed to receive rewards. The expectation of rewards would offer great temptation to delay an act of service, by which delay the criminal might escape, or, in a case like the present, to delay taking into custody a criminal who gave himself up, so that the constable might *136 appear to use exertions to procure complete information, and or that to claim the reward. There would also be a temptation, particularly to those constables in the detective service, to look to bribes or to seek promises of i’ewards from persons anxious to recover their property, and unless such were offered to be inert in their efforts.”
On the other hand it has been held that—
“If a private person is desirous of making an arrest in order to obtain a reward, it seems to us much better that he should do it under a proper warrant and appointment as special constable than that he should do it without any warrant at all.” (Hayden v. Souger, 56 Ind., 42.)
This latter holding seems to apply to the claimant Gunn, who appears to have procured himself to be appointed as a special deputy marshal for the particular case and participated in the arrest.
Consequently the services performed by him were not within the line of any official duty devolving upon him for which he was paid by the defendants or by the marshal, but was a service performed merely to enable him to procure the reward.
The reward offered was not for information leading to the arrest, but for the “ arrest and delivery” to the marshal of the person named in the offer. “These are quite distinct things,” as said in Shuey v. United States (92 U. S., 73, 76), and ordinary prudence would dictate to any citizen seeking a reward the importance, if not the necessity, of a warrant to effect the purpose. It is questionable whether a warrant would be delivered by a marshal into the hands of anyone for the purpose of making such arrest unless theperson intrusted therewith was first authorized therefor by deputation by the marshal.
Certain it is that one who makes an arrest without lawful authority, as by means of a warrant or other process, does so at his own peril, and hence responsible citizens are not apt to assume such risks.
Under the common law, “hue and cry” could be raised by any private citizen, and it was made his duty to “ acquaint the constable of the vill with all the circumstances” in order that he might search and raise the neighborhood and make pursuit; “and in the prosecution of such hue and cry the constable and his attendants have the same powers, protection, and indemnification, as if acting under a warrant of a justice of the peace;” but it was also provided that “ if a man wantonly *137 and maliciously raised an liue and cry without cause, he shall be severely punished as a disturber of the public peace.” (Blackstone’s Commentaries, vol. 2, book 4, p. 294.)
In the case of Kurtz v. Moffitt (115 U. S., 487, 504) it was said:
“The rule of the common law, that a peace officer or a private citizen may arrest a felon without a warrant, has been generally held by the courts of the several States to be in force in cases of felony punishable by the civil tribunal.”
It was held in that case that such officers could not lawfully arrest a deserter from the Army “without express order or warrant,” and such was the decision in the case of Trask v. Payne (43 Barb., 569).
It is to the manifest interest and welfare of society that the laws be obeyed, and to effect these ends the wisdom, the ingenuity, and experience of the ages have been drawn upon; and as one of the results, and in addition to the ordinary legal metliod therefor, the citizen has been stimulated to exert himself in ferreting out crime and bringing the offender to punishment, by means of rewards.
And so the offer by statute to the collectors of a portion of the penalties inflicted upon persons for attempting to defraud the revenues was, “to stimulate and reward their zeal and industry in detecting fraudulent attempts to evade the payment of duties and taxes,” as held in the case of Dorsheimer v. United States (7 Wall., 166, 173).
By Revised Statutes, section 787, it is made—
“The duty of the marshal of each district to attend the District and Circuit courts when sitting therein, and to execute, throughout the district, all lawful precepts directed to him and issued under the authority of the United States.”
So that whatever duties devolve upon a deputy must be performed in the name of his principal, the marshal, to whom he is alone responsible and from whom such duties emanate.
Independent of the marshal, therefore, a deputy, in the discharge of duties devolving upon the marshal for which he is deputized, has no official character.
Although in case of the death of the marshal his deputies are continued in office, as provided by Bevised Statutes, section 789, they are only permitted to execute such office in the name of the deceased, and if in the meantime there shall be *138 any default or misfeasances in office by snob deputies, tbe same ‘‘shall be adjudged a breach of the conditions of the bond given by the marshal who appointed them.”
By Revised Statutes, section 783, the marshal is required to give a bond “for the faithful performance of said duties by himself and his deputies,” so that for the discharge of the duties of such deputies the marshal is alone responsible to the United States.
In the case of Russell v, Stewart (40 Vt., 170) it was held in substance that a deputy sheriff, having no process in his hands to execute, was under no obligation to go in search of an offender, and that if he did so, and arrested him,- he was entitled to the reward offered therefor.
Thus showing that a deputy is not an officer upon whom the law devolves any official duty other than that which may come to him from the marshal from time to time by the delivery to him of process to execute in his name.
In the case of Powell v. United States (60 Fed. R., 687), being an action by a deputy marshal to recover for services rendered, it was held that he was not an officer of the United States.
From the statutes and decisions to which we have referred we conclude:
(1) A deputy, though appointed by the marshal, is required to take the same oath as the latter, to whom he is alone responsible, and for the faithful discharge of whose duties the marshal gives bond.
(2) He is paid for his services by the marshal such compensation as he and the marshal may agree upon, not exceeding three-fourths of the “fees and emoluments” accruing for services rendered by him, and he is not, therefore, an officer “or other person whose salary, pay, or emoluments are fixed by law or regulation,” nor is he a civil officer receiving from the Government any “salary or compensation allowed by law.”
■ (3) A deputy marshal is not an officer upon whom, as such, the law imposes any official duty, as the only duties he may be required to perforin are those which emanate from the marshal, upon whom alone they officially devolve and for which he is alone responsible.
Therefore a deputy marshal is not the prescribed official agency of the Government for making arrests, like a consta *139 ble or police officer on whom the duty is devolved by law. His actions depend not on tbe law, but on Ms employer, the marshal, who can withhold a warrant or recall it.
(4) Where a reward is offered in general terms, as in this case, for the arrest and delivery of an offender, and such arrest is made by a regularly appointed deputy marshal, as the claimant Matthews was, assisted by one who was appointed a special deputy marshal for the purpose, as the claimant Gunn was, we think they are properly joined as claimants, and that they are entitled to recover the reward so offered. (Janvrin v. Town Exeter, 48 N. H., 83-86.)
Judgment will therefore be entered in their favor for $500.