Scofield, J.,
delivered the opinion of the court:
This case comes up on demurrer. The claim is .for a refund of taxes, collected under the Direct-Tax Acts 1861, 1862 (12 Stat. L., 295, 422), and alleged to have been illegally assessed.
In 1865 the claimant was the owner of a tract of land in Pulaski County, Ark., upon which a tax of $90.06 and penalty of *294 $45.03 bad been imposed, while only two commissioners were acting. He paid the tax and penalty February 6, 1865.
May 8, 1866, the claimant made application to the Secretary ■of the Treasury, under the Act February 25, 1867 (14 Stat. L., 568), for a refund of the tax and penalty. That act is as follows :
u Sec. 4. Andbeit further resolved, That the Secretary of the Treasury shall be authorized to refund to persons from whom money has been received without warrant of law, as in payment of dues under the direct-tax laws, the sums so illegally collected, such refunding to be ordered on the presentation, in each cáse, of satisfactory evidence of the illegal collection.”
The Secretary refunded the penalty, but refused to refund the tax.
The alleged illegality in the assessment and imposition of the tax and penalty consists in the absence of a third commissioner at the time of the transaction.
Assuming that the proceedings of two commissioners, without the presence or advice of the third, were unauthorized, have they been legalized by subsequent legislation ?
March 3, 1865, after the tax and penalty had been paid by the claimant, Congress, apparently with the intention of curing the error, passed the following act:
“ That a majority of a board of tax commissioners shall have full authority to transact all business and to perform all duties required by law to be performed by such board, and no proceeding of any board of tax commissioners shall be void or invalid in consequence of the absence of any one of said commissioners.” (13 Stat. L., 502.)
In the case of Schench v. Peay (1 Woolworth’s Rep., 175), tried in United States circuit court, the effect of this act upon prior transactions came up for consideration. The case involved a title to land which had been sold for taxes levied by the two commissioners. In ruling upon the question Justice Miller, of the Supreme Court, then presiding, said :
“ When we are called upon to construe statutes claimed to be retroactive, the rule is firmly settled that we can only give them that effect when there is something on their face putting it beyond doubt that the legislature so intended ; or, to express it in other words, the legislature must have expressly declared the statute to be applicable to past transactions, or the intent must appear by an unavoidable implication. Ho such inference can be drawn from the statute before us. The first declaration is in the future tense, that a majority of the board *295 shall have authority to transact business; and the second branch of the provision, that no such provision shall be void or invalid in consequence of the absence of any one of the commissioners, has very natural reference to the exercise of the power granted for the future to a majority of the board.
“ Nothing is better settled in the law of this country than that proceedings in pais for the purpose of divesting one person of title to real estate and conferring it on another must be shown to have been in exact pursuance of the statute authorizing them, and that no presumption will be indulged in favor of their correctness. This principle has been more fre-frequently applied to tax titles than to any other class of cases.”
This decision was made in April, 1868. On the 20th of July following, Congress, with the decision of Justice Miller before them, and apparently with a view to avoid its effect, passed the following act:
“ That the acts and proceedings which have been had or performed by any two of the tax commissioners in and for the State of Arkansas shall have the same force and effect as if had and performed by all three of said commissioners.” (15 Stat. L., 123.)
This act, in express terms, is retroactive. It undertakes to do what it was found, by Justice Miller’s decision, the act of 1865 had failed to do ; that is, to legalize the proceedings of the Arkansas commissioners. If it fails of that, purpose it must be because Congress had not the constitutional power to enact it.
In the absence of any decision of the Supreme Court to the contrary, we must give to the act the effect which Congress clearly intended; and, therefore, we sustain the demurrer, with leave to the claimant to amend his petition within ten days, and in default thereof the petition will be dismissed.