WeldoN, J.,
delivered the opinion of the court.
On October 27, 1883, the claimant, Mathews, filed a petition (No. 18124) in which he substantially avers that in 1890 he was appointed by William Nelson, then clerk of the United States court in the Indian Territory, a deputy clerk of said court in the third judicial district of said Territory, in pursuance to an act of Congress to provide a temporary government for the Territory of Oklahoma; that he qualified as such deputjq and his appointment was duly approved by the United States court for said Territory by an order entered of record; that the said clerk resided in the third judicial district of the Territory, and that by virtue of said appointment the *598 claimant became, by the provisions of section 32 of said act, ex officio recorder for said judicial division.
That ho was required and did perform all such duties as are required of the recorder of deeds under the laws of Arkansas for like service; that'thence to the 1st of July, 1892, he collected fees and compensation provided by law for services as recorder; that the accounting officers of the Treasury Department without right and contrary to the law required the clerk to account for and pay into the Treasury such fees and compensations so earned and collected by claimant as recorder, as part of the. fees and emolument of said clerk. The clerk required all the deputy clerks to pay over to him said fees and compensation, for no other reason than the- official pressure of the officers of said Department, and to avoid becoming involved with the Treasury as clerk of said court he paid fees received by him as such clerk as aforesaid, and the same was paid into the Treasury of the United States, amounting to $3,307.86; that afterwards, to wit, in 1892, Mr. M. L. Bragdon was appointed as clerk of said court, and as such clerk received from the claimant the sum of $1,923.45, which was collected and earned by him as recorder of said Territory; that the amount paid by claimant to William Nelson and M. L. Bragdon amounts to the sum of $5,231; that as deputy clerk as aforesaid ho received, under the provisions of chapter 103 of the statutes of Arkansas, the sum of $2,000 for the issuance of marriage licenses, which he was compelled to pay to said clerks, as alleged herein with reference to recording-fees, and which has been paid by them into the Treasury,
On August 3, 1894, William Nelson filed a petition (No. 18551) in which he substantially alleges that in April, 1889, he was appointed clerk of the United States court in Indian Territory under an act entitled “An act to establish a United States court in Indian Territory, and for other purposes,” approved March 1, 1889, and held that place until the last of July, 1892; that thereafter, on the 13th of May, 1890, he appointed Towson N. Foster within the second judicial district of said Territory, Abraham D. Mathews within and for the third judicial district, deputy clerks; said appointments were duly approved by the court; that by virtue of said appointment the claimant and his deputies became, by virtue *599 of the provision of section 38 of last-mentioned act, recorders ex officio.
The said recorders were required to perforin and did perform the said duties required of a recorder of deeds under the laws of Arkansas; that the accounting officer of the Treasury-Department, without right and contrary to law, required claimant to account for and pay into the Treasury fees and compensations so earned and collected by this claimant and his deputies as recorders, as part of his fees and emoluments; that because of such demand, and for no other reason, in order not to become involved in any trouble, the claimant required the deputies to pay to him the fees, and in time paid them into the Treasury of the United States; that the claimant as such cleric, by his deputies, issued marriage licenses in both of said districts under and by virtue of the laws of Arkansas put in force in said Territory; that the claimant was required to account for the fees for such licenses in the semiannual returns; therefore claimant required said deputies to pay him said fees, and which were paid into the Treasury of the United States, upon the demand of the accounting officer of the Treasury Department.
In the case of Mathews, No. 18124,- the following orders and entries have been made, to wit: On May 1,1896, claimant hied request and brief; on May 11, 1896, the case was remanded to the general docket; on December 22, 1896, demurrer was filed; on May 29,1897, claimant’s brief in opposition to demurrer filed; November 10, 1897, motion to consolidate with No. 18551 filed and allowed; October 18, 1898, claimant’s printed brief in opposition to demurrer filed; March 12,1900, claimant’s reply brief was filed, and on March 13, 1900, argued and submitted. The cases were argued and submitted together.
It is insisted on the part of the counsel for Mathews that the demurrer is improperly before the court, and he requests that it be overruled or stricken from the files, because depositions were taken under a stipulation on interrogatories and cross interrogatories.
The record in this case, though involving irregularities, can be dealt with for the purpose of determining the legal rights of the parties on both sides. The demurrer is not technical in its character, but goes to the very right of the case.
*600 The demurrer may be considered by the court, notwithstanding the objections of the defendants based upon the fact that testimony has been taken since filing the same. The taking of testimony by consent does not waive the right of the defendant to demur. A demurrer may be filed at any time before a plea to the merits is interposed. There are some pleas which necessarily precede a demurrer, as, for instance, pleas in abatement; but at any time before filing a plea in bar the defendants have the right through the instrumentality of a demurrer to submit the question of the legal sufficiency of the petition to the consideration of the court. And even after a plea in bar is filed the court, in the exercise of its discretion, may allow such plea to be withdrawn and a demurrer interposed. Where it is apparent to the court, as it is in this case, that no petition can be filed the allegations of which will in law establish a liability on the part of the defendants, it will be disposed of by a consideration of and a decision on the demurrer.
In the case of Mathews, No. 18124, there is no right of recovery for the reason there is no privity of contract or legal relation between the claimant and the defendants. Whatever relations exist are between the clerk and the defendants, and not between the deputy and the defendants. The deputy has no relations with the defendants any more than a deput}'- marshal, who has been held to have no official relation to the United States (Matthews & Gunn v. The United States, 32 C. Cls. R., 123). There being no contractual or legal relations between the claimant in case No. 18124 and the United States, there is no basis upon which to predicate a right of recoveiy, and therefore, as to the claim embraced in that petition, the demurrer must be sustained and petition dismissed.
The facts found by the court in No. 18551 are substantially in accord with the averments of the petition.
The case of Nelson presents a different question, and is to be determined upon the right of the claimant to retain the alleged fees as against the United States. In the decision of that question it is necessary for us to determine as to whether the fees originating from the service of recording deeds and issuing marriage licenses become a part of the emolument account of the claimant, and his obligation to pay such fees *601 into the Treasury beyond the maximum fees allowed to him by law. He was ex officio recorder, recorded deeds and by virtue primarily of his office as clerk of the court; and we are unable to distinguish between fees originating from the exercise of his ordinary functions as a clerk and fees which originate from the performance of a duty which he as ex officio recorder performs.
The claim of counsel is that the fees did not originate in the office of clerk, and are therefor no part of the fees earned by him as clerk, but in addition thereto, and which do not by requirement of law become a part of the fees for which he is to account to the defendants.
The fees received by claimant for marriage licenses and recording were fees incident to his office as clerk, and therefore became a part of the fees properly embraced within his emolument account and subject to his maximum allowance.
It is contended that, by virtue of the act of November 3, 1893 (2 Supp. R. S., 155), the claimant is entitled to retain such fees. The statute upon which he bases his right was passed on November 3, 1893, which was after the fees were earned, and unless that act is to be construed retroactively it affords no justification for the contention of the claimant. It provides:
“Be it enacted, etc., That in all cases where the clerk of the United States court for the Indian Territory is authorized or required to perform duties other than those performed by the clerks of the district and circuit courts of the United States he shall be entitled to receive and retain for his own use and benefit such fees as may be allowed by law for such services.”
The court has had occasion to deal with the question as to whether a statute is retroactive or prospective, and in the case of Benjamin Gardner v. The United States (25 C. Cls. R., 24) it is in substance stated that a statute will not be deemed retroactive unless it be beyond doubt that it was so intended. The legislature must expressly declare a statute to be applicable to past transactions, or the intent must appear by unavoidable implication.
In the case of Hanger v. The United States (23 C. Cls. R., 293) it is said by the court, in reference to the act in contro *602 versy in that case, that “this act, in express terms, is retroactive. It undertakes to do what it was found, by Justice Miller’s decision, the act of 1865 had failed to do — that is, to legalize the proceedings of the Arkansas commissioners. If it fails of that purpose, it must be because Congress had not the power to enact it.”
In the decision of that case the court cites the opinion of Mr. Justice Miller in the case of Schenck v. Peay (Woolworth’s R., 115), in which it is said: “ When we are called upon to construe statutes claimed to be retroactive, the rule is firmly settled that we can only give them that effect when there is something on their face putting it beyond doubt that-the legislature so intended; or, to express it in other words, the legislature must have expressly declared the statute to be applicable to past transactions, or the intent must appear by an unavoidable implication.”
Construing the statute in controversy in the light of these decisions, the court is constrained to hold that the act of 1893 took effect prospectively and not retrospectively, as claimed by counsel for the claimant.
The very fact that Congress saw fit to legislate as they did in the act of 1893, is an indication that up to that time there was no such law as provided in that act; if it had been intended to construe an antecedent statute, or to operate retrospectively so as to give the right to the claimant to retain fees earned up to that time, the provisions of the statute would have expressed that intent and purpose on the part of the legislature.
Having determined that' the claimant is not entitled to the fees under and by virtue of the act of 1893, and that he was not entitled to them before that time, it is unnecessary for us to pass upon the other question raised in the case, to wit, the right of the claimant to recover after he has paid into the Treasury of the United States the fees in controversy. That question is purely in the abstract, made so by what has been decided as to the rights of the parties in the subject-matter of this controversy.
The judgment of the court is that in case No. 18551 the petition be dismissed on the facts and case No. 18124 be dismissed as heretofore stated.
Nott, Ch. J., was absent when this case was decided.